**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **RITA WHITE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:11-cv-0607** |
| ) | |
| **METROPOLITAN GOVERNMENT** ) | **Judge Trauger** |
| **OF NASHVILLE AND DAVIDSON** ) | **Magistrate Judge Brown** |
| **COUNTY,** ) | |
| ) | |
| **Defendant.** ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff, by and through her attorneys of record and pursuant to Rule 56 of the Federal Rules of Civil Procedure and the local rules and hereby files her response in opposition to Defendant's Motion for Summary Judgment:

### FACTUAL SUMMARY

For the year 2006, Plaintiff was evaluated by Lieutenant Tindall and received an acceptable evaluation. (Ex. A, Declaration of White, Ex. 2 - 2006 Performance Evaluation). For the year 2007, Plaintiff was evaluated by Sergeant Garafola and received an acceptable evaluation. (Ex. A, Declaration of White, Ex. 3 – 2007 Performance Evaluation).

Plaintiff requested to be allowed to rotate positions within the warrant division from her supervisors, including Lt. Tindall and Sgt. Garafola, because it was causing too much stress. (Ex. A, Declaration of White, Paragraph 9). Plaintiff was informed by her supervisors that she was not allowed to rotate because she was dyslexic and had ADD or ADHD. (Ex. A, Declaration of White, Paragraph 9). Plaintiff is not dyslexic and has never told anyone that she was dyslexic. Further, Plaintiff specifically informed my supervisors that she was not dyslexic.

1

Despite this fact, Lt. Tindall openly stated that Plaintiff was dyslexic in front of other employees. (Ex. A, Declaration of White, Paragraph 9).

During 2008, Plaintiff made a number of requests to rotate her position from solely handling the radio to performing other duties of warrant clerks from Sgt. Garafola and Lt. Tindall due to the stress of performing the radio. However, these requests were again denied because Plaintiff was dyslexic. Again, Plaintiff informed her supervisors that she was not dyslexic. (Ex. A, Declaration of White, Paragraph 9).

Sgt. Garafola began to accuse Plaintiff of failing to perform her job duties. As a result of these accusations, Plaintiff filed a formal grievance against Sgt. Garafola on June 18, 2008. (Ex. A, Declaration of White, Paragraph 11; Ex. 4, Grievance – 6/18/08). In the Grievance, Plaintiff noted:

> General Order 99-8 states "All employees have the right to work in an environment free of all forms of harassment and discrimination. Any violation of this type is a form of serious employee misconduct."
>
> Recently Sgt. Mark Garafola, my immediate supervisor made false accusation concerning my work ethic and performance in the Criminal Warrants Division. During his accusations he addressed me in a loud and disrespectful manner. He made accusations but, could not produce reasonable grounds or evidence to support his accusations. I feel I am being harassed and subject to a hostile work environment.
>
> * * * *
>
> … The way Sgt. Garafola conduct himself as my immediate supervisor and his harassment has adversely affected me. His consistent rudeness in the way he talks to me and harassment has caused me anxiety, undo stress and additional medical problems. Sgt. Garafola has conducted himself to be a serious form of misconduct supervisor as a supervisor and the position he holds.
>
> I want to be able to perform my job with Metro Nashville Police Department in a professional manner and to be able to conduct my job responsibilities in a non-hostile work environment. It is my desire to be able to function in a harmonious and cooperative work relationship with my supervisors and co-workers. I expect to be treated with respect and to perform my responsibilities in a health environment.

(Ex. A, Declaration of White, Paragraph 11; Ex. 4, Grievance – 6/18/08). This was clearly a protected activity.

After the filing of the grievance, Plaintiff spoke to Sue Bibb in Human Recourses and advised her that Plaintiff's supervisors have informed her that she was dyslexic, as such, was confined to working the radio and precluded from rotating positions within the warrant division. Plaintiff told Ms. Bibb that she was not dyslexic and wanted to rotate job duties like other employees. (Ex. A, Declaration of White, Paragraph 11). With respect to Plaintiff's grievance against Sgt. Garafola, Lt. Tindall denied the majority of her complaints, except the complaint about the use of sick time. (Ex. A, Declaration of White, Paragraph 12). Plaintiff appealed Lt. Tindall's denial of her grievance per the MNPD policies to a Grievance Panel. *Id.*

Human Resources contacted Plaintiff's supervisors by e-mail and requested information concerning Plaintiff's allegations regarding her perceived medical conditions as follows:

a.   7/29/08 – Email from Human Resources to Supervisory Officers –

"During our investigation, the issue of her job assignments related to her possible medical condition was raised by Ms. White. Specifically, the issue of not being assigned to enter warrants due to ADHD and/or dyslexia. Sgt. Garafola related that this issue had been addressed before he was assigned to Warrants. He told me yesterday that he had discussed this further with Captain Roller and Lt. Tindall following his meeting with the Board. It would be helpful to the investigation to receive a brief e-mail from each of you concerning this issue."

b.   7/29/08 – Email from Captain Roller to Human Resources –

"The subject of Mr. White's assignment to the radio has been discussed a couple of times since my assignment to Warrants. I've discussed the reason for it with Lt. Tindall and Sgt. Bourk and both have told me of her claims to have ADHD and dyslexia. Given those claims, it would be reasonable to foresee errors being made in the warrant entry leading to corrective action against Ms. White and increased liability for the department if she were assigned to warrant entry. For this reason she has remained assigned to the radio and this information was passed on when Sgt. Garafola was transferred her last year…"

3

c.      7/30/08 – Email from Lt. Tindall to Human Resources –

"On more than one occasion in general conversation Ms. White has told me she has disabilities…  I'm sure in conversation I told Sgt. Garafola that because of her stated disability I did not want her to enter warrants."

(Ex. C, E-Mails between HR and Supervisory Officers)   These supervisors clearly perceived her to have dyslexia and ADHD.

Plaintiff appeared before the Grievance Panel in July of 2008 and informed the committee that she was being falsely accused of failing to perform her job duties and that both Lt. Tindall and Sgt. Garafola had made public statements to other employees that Plaintiff was dyslexic and assigned to the radio because of this condition.   Plaintiff also informed the Grievance Panel that she was not dyslexic. (Ex. A, Declaration of White, Paragraph 12, Ex. 5 – Grievance Panel Report).

Defendant required Plaintiff to work the radio only as a result of being perceived as being dyslexic despite being informed that she was not dyslexic.  (Ex. A, Declaration of White, Paragraphs 9-12, 14).  Plaintiff denies that she made repeated errors or any more errors that any other person in the warrants division.  (Ex. A, Declaration of White, Paragraph 21).   Other warrant clerks made mistakes which resulted in the arrest of people and were not assigned to work only the radio, including Nick Pride, Sharon Trent, Paula Jones and Donya King.  (Ex. E, Depo. of Roller, pp. 20-28; Ex. F – Depo. of Trent, pp. 10-14; Ex. G – Depo. of King, pp. 10-14, 24-25, 38; Ex. H – Various Employment records of Pride, Trent and Jones; Ex. I, Depo of Tindall, 30; Ex. J – Depo. of Pride – *Milligan v. Nashville*, pp. 47-48, 56-58, 60, 65, 69-71).  In fact the errors in the warrants division were "fairly normal."  (Ex. G, Depo. of Trent, p. 14; Depo. of King, p. 12).

4

The issue of Plaintiff being precluded from rotating because she was perceived as dyslexic was investigated and discussed during a hearing on the grievance she filed against Sgt. Garafola on June 18, 2008. (Ex C – Grievance Report, 8-5-08). The Grievance Panel report issued on August 5, 2008, indicates as follows:

FINDINGS

In meeting with the Grievance Board, Ms. White stated that she was being falsely accused of failing to perform her duties. Ms. White further stated that Lieutenant Tindall and Sergeant Garafola had made public statements to other employees that she was dyslexic, and that she was assigned to the radio (and not allowed to enter warrants) due to this condition. Ms. White volunteered the information that she was ADHD, but stated that she is not dyslexic . . . Ms. White repeatedly claimed that she felt harassed and intimidated and state more than once that she felt she was treated differently from other employees. . . . .

Regarding Ms. White's regular assignment to working the radio, as opposed to entering warrants, Sgt. Garafola stated that these job assignments were made prior to his being assigned to Warrants. He said that he had been told be Lt. Tindale [sic] that Ms. White had medical condition(s) such as ADHD or dyslexia which prevented her from entering information correctly. . . .

CONCLUSIONS

…. She [Ms. White] contends that it is different for her and that it has created a hostile and intimidating work environment. From the written and oral statements of Ms. White, it appears to this Board that Ms. White believes herself adversely affected by a violation of the written policy concerning harassment and discrimination…

Regarding the issue medical condition(s) and assignments, the statements of Sergeant Bourk, Lieutenant Tindall, and Captain Roller indicate that Ms. White raised the issue of ADHD and dyslexia, and that assignment to radio duty was an accommodation to these reported medical problems. (Emphasis in the original).

RECOMMENDATIONS

1.      Ms. White will be placed on an immediate Performance Improvement Plan which specifically addresses the areas needing improvement and how improvement will be measured.

2.      From all the proof offered, it appears that Sergeant Garafola conducts private counseling meeting with Ms. White. While Ms. White contends that she

feels uncomfortable and intimidated with this arrangement, the option of correcting and counseling Ms. White in the presence of peers seems unacceptable. It is recommended that future counseling meeting be held in the presence of another supervisory employee in the Warrants Division.

3. Ms. White should be offered the opportunity to rotate to job assignments such as warrant entry, if she feels she can perform these duties in an acceptable manner. If that is the case, expectation should be included for these duties in the PIP. If she feels unable to perform these duties due to a medical condition(s), documentation should be submitted to Human Resources.

(Ex C – Grievance Report, 8-5-08). Not only did the Greivance Panel find, erroneously, that Plaintiff had the disabilities of dyslexia and ADHD, it concluded that Plaintiff's supervisors should place her in the rotation she had been excluded from. Based upon the statements of all involved, the Panel concluded she was qualified to be placed in the rotation.

Plaintiff appealed the Grievance Panel decision which was upheld during further appeals pursuant to the MNPD policies. (Ex. A, Declaration of White, Paragraph 13). After the final stage of the grievance process, Plaintiff was presented an Employee Grievance Report to sign August 18, 2008. *Id.*, Plaintiff signed the bottom of the document indicating that she disagreed with the denial of my grievance. (Ex. A, Declaration of White, Paragraph 9; Ex. 6 - Employee Grievance Report).

After the Grievance Panel recommended that Plaintiff be allowed to rotate positions if Plaintiff felt she "can perform these duties in an acceptable manner," Plaintiff was not allowed to rotate positions for the remainder of her employment with the MNPD which ended in January of 2010. (Ex. A, Declaration of White, Paragraph 14). After this conclusion of the grievance, Plaintiff requested on numerous occasions to be allowed to rotate from her supervisor, Lt. Tindall, but was informed that she could only work the radio because he stated she was dyslexic. (Ex. A, Declaration of White, Paragraph 14).

On August 18, 2008, (the same date Plaintiff was asked to sign the Employee Grievance Report acknowledging the denial of her grievance), Plaintiff was notified by Lt. Tindall and Sgt. Garafola that she was being formally charged with one policy violation (Violating MNPD General Order 04-03 – Personal Behavior Section E. Responsibility) for her actions which occurred in October 2006 during Operation Falcon and the arrest of Paula Milligan. (Ex. A, Declaration of White, Paragraph 16, Ex. 7 - MNPD Form 313). This is the first time that Plaintiff had been informed that there would be any disciplinary action against her as a result of any of her actions in October 2006, during Operation Falcon. (Ex. A, Declaration of White, Paragraph 16). This was an act of retaliation.

The charge presented to Plaintiff on August 18, 2012, was for conduct which occurred in October of 2006 involving the false arrest of Paula Milligan which is almost two years after Defendant was notified that Ms. Paula Milligan was falsely arrested and that the charges had been dismissed. (Ex. E, Depo. of Roller, pp. 11-2, Ex. S – Letters from Ms. Frizzell – November 2006 (attached as Exhibit 11 Roller Depo.); Ex. N – Order of Dismissal, Milligan, 11/6/06). Further, this charge was presented over 10 months after the Defendant completed its investigation of the Milligan incident which was concluded by December 31, 2006. (Ex. K, Civil Service Hearing, Testimony of Roller, pp. 141-142).

According to policy, an employee is required to be notified of charges within seven days of the completion of an informal investigation. (Ex. O, Discipline and Corrective Action Policy; Ex. E, Depo. of Roller, pp. 29-38; Ex. K – Civil Service Hearing, Testimony of Tindall, pp. 91-93). After being presented with the charge, Lt. Tindall requested that Plaintiff agree to the charge and accept a 4 day suspension. (Ex. A, Declaration of White, Paragraph 17). Plaintiff

7

refused to agree to the charge and suspension as she was not informed of any potential policy violation for almost two years after the events and requested a hearing on the charges. *Id.*

Plaintiff admits that she was responsible for verifying the warrant based on the resources and information provided to her during Operation Falcon. However, if a senior officer informed her that the information in the warrant jacket matched the officer's dispatch, she would be entitled to rely upon that information. (Ex. K, Civil Service Hearing, Testimony of Roller, pp. 151-153). Plaintiff admits that errors which led to the arrest of Paula Milligan should have received some discipline, wherein the investigation was concluded by December 31, 2006. (Ex. K, Civil Service Hearing, Testimony of Roller, pp. 141-142). Mr. Pride was employed until March 2007, but was not disciplined. (Ex. J., Depo. of Pride, *Milligan v. Nashville*, pp. 11-12, 47-48, 56-58, 60, 65, 69-71).

Plaintiff filed a charge online with the EEOC on October 24, 2008, for disability discrimination. (Ex. A, Declaration of White, Paragraph 18, Ex. 9 – EEOC Charge Detail Inquiry). On November 4, 2008, a formal charge of disability discrimination was filed with the EEOC. (Ex. A, Declaration of White, Paragraph 18, Ex. 10 – EEOC Charge 494-2009-00183). This charge was assigned # 494-2009-00183. After filing a grievance and EEOC charge, Plaintiff was still refused the opportunity to rotate positions. (Ex. A, Declaration of White, Paragraph 19). Therefore acts of discrimination and retaliation occurring within the previous 300 days are not time barred.

In December of 2008, Office Hagar instructed Plaintiff to carry a radio with her while she used the bathroom. On December 2, 2008, Plaintiff sent an e-mail to Sue Bibb in Human Resources and Jackie Hoffman at the MNPD regarding being required to carry a radio into the bathroom. (Ex. A, Declaration of White, Paragraph 19, Ex. 11 – E-Mail to Bibb – 12/2/08).

8

Plaintiff felt shunned, "less than" others in the office and disrespected because she was isolated by the assignment to solely work the radio by her supervisors because of her perceived disability. (Ex. A, Declaration of White, 3, 9-14). Plaintiff was treated differently because of her perceived disabilities. (Ex. R, Depo. of Mann, pp. 15, 20-28). A co-worker, Officer Mann, felt that this was outrageous, degrading and demeaning. *Id.* He also observed employees knock on the bathroom door when Plaintiff went to the restroom. *Id.* Officer Mann further testified that he did not like the way that Ms. White was being treated and he thought it was inappropriate. *Id.*

On December 11, 2008, Plaintiff was sent formal notification of the scheduling of a disciplinary hearing. (Ex. A, Declaration of White, Paragraph 20, Ex. 12 - Notification of Hearing). When the formal hearing notice was provided to Plaintiff, she was informed that her hearing would consider two policy violations stemming from her actions during the 2006 Operation Falcon. *Id.* Again, further harassment and retaliation.

After Plaintiff requested a hearing on the single charge presented by Defendant in the MNPD Form 313 on August 18, 2008, Defendant added a second charge before the hearing was scheduled which arose from the same conduct in October of 2006. (Ex. A, Declaration of White, Paragraph 20, Ex. 12 - Notification of Hearing). The addition of another charged allowed the Defendant to seek increased punishment. *Id.*

On December 18, 2008, Plaintiff received a substandard evaluation from Sgt. Garafola for the 2008 year. (Ex. A, Declaration of White, Paragraph 21, Ex. 13 – Initial 2008 Performance Evaluation). Yet another act of retaliation and harassment. After the unacceptable evaluation by Sgt. Garafola, Sgt. Garafola also placed me in a job improvement plan which required me to take classes including: 1) Dealing with Difficult People; 2) Respect in the Workplace; and 3) Conflict Management. *Id.* Plaintiff filed a written response to the evaluation,

9

addressing each alleged deficiency which specifically noted that her supervisors have labeled me with a disability that she do not have. *Id.*

On January 14, 2009, a departmental hearing was held on the two charges brought against Plaintiff for her actions during the 2006 Operation Falcon. (Ex. A, Declaration of White, Paragraph 22). After this hearing, Plaintiff received a suspension of 7 days. *Id.* Plaintiff was immediately required to serve this suspension and was not allowed to utilize any of my accrued vacation days. *Id.*

On January 14, 2009, Plaintiff went to the EEOC and filed a formal EEOC charge for disability discrimination and retaliation. (Ex. A, Declaration of White, Paragraph 23, Ex. 15 - EEOC Charge 494-2009-00698).

On February 6, 2009, Plaintiff's substandard 2008 Performance Evaluation which was given by Sgt. Garafola was rescinded and Plaintiff was given an acceptable evaluation for 2008. (Ex. A, Declaration of White, Paragraph 24, Ex. 16 – Final 2008 Performance Evaluation). In the supervisor comments, Sgt. Garafola indicated that, "This evaluation was completed on 12/18/08 but I was instructed by my Chain of Command that it was not acceptable due to the fact that I did not document Ms. White's incidents on a FORM 311." *Id.*

Despite the fact that Sgt. Garafola's 12/18/08 evaluation was rescinded, Plaintiff was not informed that she was not required to comply with the job improvement plan that Sgt. Garafola ordered as part of his initial evaluation. (Ex. A, Declaration of White, Paragraph 25). Accordingly, Plaintiff presented to her first class as instructed by Sgt. Garafola in the job improvement plan. *Id.*

On February 19, 2009, Plaintiff received an e-mail from Captain Roller which states in pertinent part:

Rita, upon receiving your EEOC complaint I realized I should have advised you the classes were no longer a requirement at the time you received a standard evaluation. It was an oversight on my part and I apologize for that. I received the notice late Tuesday and was unaware your first class was scheduled for Wednesday morning; therefore you had attended the class before I spoke with Lt. Tindall. At this time, due to your standard evaluation, the JPIP is rescinded along with the requirement to attend classes.

(Ex. A, Declaration of White, Paragraph 26, Ex. 17 - E-mails pertaining to Job Performance Plan).

On April 6, 2009, Plaintiff attended her civil service hearing with respect to the two charges placed against her for her conduct during the 2006 Operation Falcon. As a result of this hearing, the Civil Service Commission reduced my suspension from 7 days to 4 days as the Administrative Judge found that the 7 day suspension "was excessive." (Ex. A, Declaration of White, Paragraph, 26, Ex. 18 - Initial Order; Ex 19 - Final Order). The Administrative Judge also noted that MNPD added a second charge for the same conduct after she requested a hearing on the original charge and that any violation constituted a single offense. *Id.*

As a result of the stress and anxiety experienced by Plaintiff as a result of Defendant's actions, Plaintiff filed for a medical disability pension in November of 2009 which was approved in December of 2009. (Ex. A, Declaration of White, Paragraph 20, Exhibit 20 – Application and Approval).

## STANDARD OF REVIEW

Defendant as moving party has the initial burden of showing the Court, by reference to the record, the basis for the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the non-moving party has the burden of proof at trial, the movant must carry the initial burden in one of two ways: either by negating an essential element of the non-movant's case or by showing that there is no evidence to support a fact necessary to the non-movant's case. *See Clark v.*

*Coats & Clark, Inc.*, 929 F. 2d 604, 606-08 (11th Cir. 1991). Before the Court can evaluate the Plaintiffs' opposition to the motion, it must first determine whether the Defendant has met its initial burden of showing that there are no issues of material fact and that Defendant is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F. 3d 248, 254 (11th Cir. 1997) (per curiam). Bald, conclusory statements that the Plaintiffs cannot meet their burden at trial are insufficient. Only after the movants have met their initial burden does the burden shift to the non-moving party to "demonstrate that there is indeed a material issue of fact that precludes summary judgment." 929 F. 2d at 608.

As the Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), summary judgment is inappropriate unless the evidence is so one-sided that a reasonable jury could arrive at only one conclusion. 477 U.S. at 251-252. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Id.* at 255. (Emphasis added). In ruling on a motion for summary judgment, the Court should never weigh the evidence or find the facts. Instead the Court's role under F.R.C.P. 56 is narrowly limited to assessing the threshold issue of whether a genuine issue exists as to material facts requiring a trial. *Id.* at 249. Thus, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *See Hunt v. Cromartie*, 526 U.S. 541, 550-555 (1999); *Eastman Kodak Co. v. Image Technical Servs.*, *Inc*., 504 U.S. 451, 456 (1992); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); and *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-159 (1970).

Reasonable inferences are inferences reasonably drawn from all facts then before the Court, after sifting through universe of all possible inferences the facts could support. Reasonable inferences are not necessarily more probably or likely than other inferences that might tilt in the moving party's favor. Instead, so long as more than one reasonable inference can be drawn, and that inference creates a genuine issue of material fact, the trier of fact is entitled to decide which inference to believe and summary judgment is not appropriate. *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999); *Patterson & Wilder Const. Co., Inc. v. United States*, 226 F.3d 1269, 1273 (11th Cir. 2000).

Based on the above referenced standard, it is clear that questions concerning the credibility of witnesses are not normally disposable upon motion for summary judgment. Further, it is well established that questions concerning a person's state of mind (such as motive, knowledge, intent, good faith or bad faith, malice, fraud, conspiracy or consent) are rarely disposable at the summary judgment stage. *See Hutchinson v. Proxmire*, 443 U.S. 111 (1979); *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2nd Cir. 2000) (commenting that summary judgment is used "sparingly" where intent and state of mind are implicated); *EMI Catalogue Partnership v. Hill, Holliday, Conners, Cosmopulos, Inc.*, 228 F.3d 56, 61 (2nd Cir. 2000) ("caution" must be observed with issues involving a defendant's intent); *Seamons v. Snow*, 206 F.3d 1021, 1027-1028 (10th Cir. 2000) (noting that grant of summary judgment is "especially questionable" in cases delving into a party's state of mind); *United States, ex rel. Cantekin v. University of Pittsburgh*, 192 F.3d 402, 411 (3rd Cir. 1999) (noting the "basic rule" that state of mind issues typically should not be decided on summary judgment); Mendocino *Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1302 (9th Cir. 1999) (observing that state of mind questions are factual issues inappropriate for summary judgment); *Geier v. Medtronic, Inc.*, 99 F.3d 238,

13

240 (7th Cir. 1996) (applying summary judgment standard with special scrutiny where cases turn on issues of intent and credibility); *Hossaini v. Western Missouri Med. Ctr.*, 97 F.3d 1085, 1088 (8th Cir. 1996) (recognizing the difficulty of disposing intent issues at the summary judgment stage).

## III. Argument

### A.    Plaintiff's claims are not time barred.

Given that Plaintiff's claims include discrete acts of discrimination and hostile environment, the harassment over the years might not be discrete acts as contemplated by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109.  As such, Plaintiff's claims are not time-barred because she filed a charge with the EEOC within 300 days of the last discriminatory act; i.e., failure to abide by the recommendations of the Grievance Panel inserting her into the rotation, disciplinary actions for alleged policy violations two years earlier, and negative performance evaluations.  Defendant argues that each request of Plaintiff to her immediate supervisor for rotation assignment doesn't create a separate discreet act.  However, in the case at bar, Plaintiff used the internal grievance procedure to address the discrimination and harassment she was enduring.  That very Grievance Panel concluded that Plaintiff had dyslexia and ADHD that effected her ability to function in her job (regarded as), she should be inserted in the rotation (qualified to perform the essential functions), and monitored to assist her if her disabilities hindered her performance (accommodation).  After this report, Plaintiff requested that she be placed into the rotation per the Panels conclusion.  Her supervisors refused and instead began a disciplinary process against her and issuing negative performance evaluations.  All of the above occurred within 300 days of her EEOC charge.

14

However, in computing the statutory period under Title VII, the Supreme Court in *Morgan* made the distinction between hostile work environment claims and those involving discrete acts. In *Morgan*, the Supreme Court held that a hostile work environment claim is treated differently for purposes of the 300-day limitations period. A hostile work environment claim is not time-barred so long as one act of the harassment took place during the limitations period.

Plaintiff agrees that a prerequisite to a Title VII action is the timely filing of a charge of discrimination and the applicable period is 300 days. Further, Plaintiff agrees that she must file her Complaint under the Tennessee Human Rights Act within one (1) year "after the discriminatory act ceases."

For purposes of computing the applicable period of time, it is important to note that Plaintiff's claim for disability discrimination is also under a "hostile working environment theory." She made multiple complaints internally of harassment and hostilities.

Although Plaintiff claims that she was denied insertion into the rotation on multiple occasions, the Court isn't compelled to view those in the same context of a "discrete act" as contemplated in *Morgan*. In the context of a disability harassment/retaliation claim, however, these actions can be considered as one of several adverse employment actions creating a hostile environment. In this case, Plaintiff is alleging the denial of insertion into the rotation, denial of an accommodation, retaliation and harassment in the context of an overall hostile work environment. There can be no question that at least one of these instances occurred within the 300 day requisite.

15

**B.    Defendant Has Failed to Meet Its Burden that It Is Entitled To Summary Judgment on Plaintiff's Regarded as Disabled Claims**

Under the ADA "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation**, job training, and other terms, conditions, and privileges of employment**." 42 U.S.C. § 12112(a). The term "disability" means, (A) a physical or **mental impairment** that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; **or (C) being regarded as having such an impairment.** 42 U.S.C. § 12102(1)(A)-(C). An individual may establish a disability under any one or more of these prongs.   29 CFR 1630.2(g)(2).  The definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  42 U.S.C. § 12102(4)(A). Additionally, in amending the ADA, Congress stated: **"If an individual establishes that he or she was subjected to an action prohibited by the ADA because of actual or perceived impairment -- whether the person actually has the impairment or whether the impairment constitutes a disability -- then the individual will qualify for protection under the Act."**  154 Cong. Rec. at S8842.  *See also* 29 C.F.R. §1630.2(j)(1)(iii) (the primary object in cases brought under the ADA should be whether employers have complied with their obligations and whether discrimination occurred, not whether an impairment limits a major life activity which should not demand extensive analysis).

The term "'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA requires the employee and employer to interact in good faith to determine the "precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29

C. F. R. § 1630.2(o)(3); *Lafata v. Church of Christ Home for the Aged,* 325 F. App'x 416, 422 (6th Cir. 2009). S*ee also Kleiber v. Honda of Am. Mfg., Inc.,*485 F.3d 862, 871 (6th Cir. 2007) ("the interactive process is mandatory, and both parties have a duty to participate in good faith."). Failure to engage in the interactive process can result in liability under the ADA if reasonable accommodations would have been possible. *Burress v. City of Franklin,* 2011 U.S. Dist. LEXIS 92668 *41 (M.D. Tenn. August 17, 2011) (ECF No. 37-1) (citing *Lafata,* 325 F. App'x at 422). Moreover, **an employee is not required to use the "magic words" accommodation or disability** to trigger the required interactive process, asking for continued employment can be sufficient. *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42. (*emphasis added*)

Essential functions are "fundamental job duties of the employment position . . . not including] the marginal functions of the position." 29 C.F.R. § 1630.2(n)(1). A job function may be essential where: (1) "the reason the position exists is to perform that function," (2) there are a "limited number of employees available among whom the performance of that job function can be distributed," (3) "[t]he function [is] highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function," or (4) for other reasons. 29 C.F.R. § 1630.2(n)(2)(i)-(iii). Essential functions are the critical job duties, while marginal functions are those tasks or assignments that are tangential.

The term substantially limits means "(i) Unable to perform a major life activity that the average person in the general population can perform; **or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."** 29 C.F.R. §1630.2(j)(1)(i)-(ii). Major Life Activities mean "functions such as caring for oneself,

17

performing manual tasks, walking, seeing, hearing, speaking, breathing, **learning, and working.**" 29 C.F.R. §1630.2(i). (*emphasis added*)

To prove a **"regarded as"** claim under the ADA, as amended, plaintiff must show she was "subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment **whether or not the impairment limits or is perceived to limit a major life activity**." 42 U.S.C. § 12102(3)(A) (2009). An impairment that is minor or transitory, having an actual or expected duration of six months or less, does not satisfy the "regarded as" prong. 42 U.S.C. § 12102(3)(B).

Direct evidence includes "evidence that the employer relied upon the plaintiff's disability in making its employment decision." *Monette,* 90 F.3d at 1185-86. Likewise, claims for failure to accommodate are analyzed under the direct evidence framework. *Kleiber,* 485 F.3d at 868-869. To prove a claim of discrimination under the ADA using direct evidence, a plaintiff must show that she: (1) is disabled; (2) is otherwise qualified to perform the requirements of her position despite her disability, (a) without accommodation, (b) with an essential job requirement eliminated, or (c) with a proposed reasonable accommodation; and (3) the employer bears the burden of proving the a challenged job criterion is essential and a business necessity or that a proposed accommodation will impose and undue hardship. *Monette,* 90 F.3d at 1186. Direct evidence does not require the fact finder to draw any inferences to reach that conclusion. *Amini v. Oberlin Coll.,* 440 F.3d 350, 359 (6th Cir. 2006). Direct evidence is sufficient to defeat a motion for summary judgment in employment discrimination cases. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 511(2002).[1] An employer's discriminatory statements may form the basis for

---

[1] To establish unlawful discrimination by indirect evidence, the employee must first establish a *prima facie* case of discrimination. *Monette,* 90 F.3d 1173, 1186. The employee may establish a *prima facie* case of

18

an inference of discrimination and establish pretext. In *Ash v. Tyson,* 546 U.S. 454, 126 S.Ct. 1195 (2006), the Court held that a manager's use of the word "boy" when referring to African Americans was evidence of discriminatory animus in the selection process. *Id.* at 1197. In *Ross v. Campbell Soup, Co.*, 237 F.3d 701 (6th Cir. 2001), the Court held that statements made were sufficient to establish a genuine issue of pretext in a "regarded as" disability case. The Grievance Panel found Plaintiff to have a disability and offered an accommodation, i.e. close monitoring to measure the effect of her disability on performing the essential functions of the job. Defendant has negated any argument it may have as to her qualifications since her supervisors refused to implement the very plan set forth by the Panel.

### 1.    Defendant Regarded Plaintiff as Disabled

Further, because Plaintiff's perceived impairment lasted longer than six months, it met the requirements of the ADA that it be neither minor nor transitory. Moreover, Defendant's statement that she could not function in the job and that it would not insert her into the rotation because of her dyslexia and ADHD conflates an employer's responsibilities under the ADA but nonetheless objectively indicates that Defendant viewed her as disabled. This is further

---

discrimination by showing that (1) he is disabled within the meaning of the ADA; (2) he is "otherwise qualified" to perform the job in question with or without a reasonable accommodation; and (3) the defendant either refused to make a reasonable accommodation for his disability or made an adverse employment decision regarding him solely because of his disability. *Monette,* 90 F.3d at 1178. Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Id.* at 1185. If the employer is able to sustain its burden the burden shifts back to the employee to show by a preponderance of the evidence that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* at 1186. A showing of pretext can be made by demonstrating the proffered reason: (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008).

supported by the Grievance Panels own finding.  The Grievance Panel report issued on August 5, 2008, indicates as follows:

> FINDINGS
>
> In meeting with the Grievance Board, Ms. White stated that she was being falsely accused of failing to perform her duties.  Ms. White further stated that Lieutenant Tindall and Sergeant Garafola had made public statements to other employees that she was  dyslexic, and that she was assigned to the radio (and not allowed to enter warrants) due to this condition.  Ms. White volunteered the information that she was ADHD, but stated that she is not dyslexic . . . Ms. White repeatedly claimed that she felt harassed and intimidated and state more than once that she felt she was treated differently from other employees. . . . .
>
> Regarding Ms. White's regular assignment to working the radio, as opposed to entering warrants, Sgt. Garafola stated that these job assignments were made prior to his being assigned to Warrants.  **He said that he had been told be Lt. Tindale [sic] that Ms. White had medical condition(s) such as ADHD or dyslexia which prevented her from entering information correctly. . . .**

### 2.    Plaintiff was Qualified to Perform the Requirements of Her Position

To meet the second prong of the analysis, the facts demonstrate that Plaintiff was otherwise qualified to perform the requirements of her position without any reasonable accommodation.  *Monette,* 90 F.3d at 1186; *Burress,* 2011 U.S. Dist. LEXIS 92668 *41-42. Plaintiff requested rotation into areas other than working just the radio.  Her supervisors refused, alleging that her disability would cause her to make mistatkes in the entry of data for warrants. They came to this conclusion without any interactive conversation with Plaintiff as to how they could accommodate her disability and allow her the opportunity to perform the essential functions of the position.  In bypassing the interactive conversation requirement of the ADA, Defendant further failed to make any effort to determine if she needed additional accommodations to perform her job.  Again, this perception demonstrates Defendant's full blown misunderstanding of the ADA.

### 3.  Defendant Cannot Demonstrate Business Necessity or Undue Hardship

The EEOC guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act (EEOC Oct. 22, 2002) and the Code of Federal Regulations provide guidance on several factors that should be considered in making an undue hardship determination.  Onlineat  http://www.eeoc.gov/policy/docs/accommodation.html.  29 C.F.R. §1630.0(p)(2)(i)-(v).  They include:

- o the nature and cost of the accommodation needed;
- o the overall financial resources of the facility making the reasonable accommodation; the number of persons employed at this facility; the effect on expenses and resources of the facility;
- o the overall financial resources, size, number of employees, and type and location of facilities of the employer (if the facility involved in the reasonable accommodation is part of a larger entity);
- o the type of operation of the employer, including the structure and functions of the workforce, the geographic separateness, and the administrative or fiscal relationship of the facility involved in making the accommodation to the employer;
- o the impact of the accommodation on the operation of the facility.

However, the undisputed direct evidence establishes that Defendant discriminated against Plaintiff on the basis of her perceived disability and refused to implement the findings of the Grievance Panel to insert her in the rotation and monitor her performance as part of her PIP. Defendant cannot argue reasonableness when it designed the accommodation.

### C.  Plaintiff's indirect evidence of disability discrimination is sufficient to deny Defendant's Motion for Summary Judgment

Under the indirect evidence method, the employee must first establish a prima facie case of discrimination.  *Monette v. Elec. Data Sys Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996).  The employee may establish a *prima facie* case of discrimination by showing the (1) she is disabled within the meaning of the ADA; (2) she is otherwise qualified the job is question with or without

a reasonable accommodation; and (3) the defendant either refused to make a reasonable accommodation for her disability or made an adverse employment decision regarding her solely because of her disability. *Smith v. Ameritech*, 129 F.3d 857, 866 (6th Cir. 1997). Adverse employment actions can be characterized as a less distinguished title, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. *Smith v. City of Salem, Ohi,* 378 F.3d 566, 575 (6th Cir. 2004); *White v. Burlington N. & Santa Fe R. Co.,* 364 F.3d 789, 799 (6th Cir. 2004) Plaintiff was left in isolation to monitor the radio instead of being placed in the rotation with other employees and allowed to gain vital knowledge and experience in the remaining areas of the warrants division. In addition, Plaintiff's supervisors made it clear in front of her co-workers that her isolation was because of her disability. As such, Plaintiff could not compete against her co-workers when it came to job experience.

Once the employee successfully makes out a *prima facie* case, a mandatory presumption of discrimination is created and the burden shifts to the employer to proffer a non-discriminatory reason for discharging the employee. *Monette* at 1185. If the employer is able to sustain its burden, then the mandatory presumption evaporates into a permissive inference, and the burden shifts back to the employee to show by a preponderance of the evidence that the employer's proffered reason for discharge was actually a pretext intended to hide unlawful discrimination. *Id.* at 1186.

### 1. Defendant's Alleged Legitimate Non-Discriminatory Reason Was a Mere Pretext for Discrimination[i]

Once a *prima facie* case is established, Defendant has the burden of articulating a legitimate, non-discriminatory reason for taking its adverse employment action. If Defendant

demonstrates such, Plaintiff then assumes the burden of showing that the reasons given by Defendant were a pretext for discrimination and retaliation.

Accordingly, at this stage the burden shifts to Defendant, which must demonstrate a legitimate business reason justifying its action.

An employee may demonstrate that an employer's proffered, non- discriminatory reasons for an adverse employment action are pretextual by revealing the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. Three of the most common ways to undermine an employer's proffered reasons include: (1) establishing that the proffered reasons have no basis in fact, (2) establishing that the proffered reasons did not actually motivate the adverse employment action, or (3) establishing that the proffered reasons were insufficient to motivate the adverse employment action.

Pretext may be shown either directly by persuading the trier of fact that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of belief. *Smith v. Chrysler Corp.*, 155 F. 3d 799, 805-806 (6th Cir. 1998) In other words, the plaintiff can establish pretext if the employer's stated reason for action had no basis in fact, did not actually motivate the decision, **or was never used in the past**. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000).

Defendant argues that Plaintiff could not be inserted into the rotation given the risk of mistakes when entering data. However this philosophy wasn't used in the past. Plaintiff denies that she made repeated errors or any more errors that any other person in the warrants division. (Ex. A, Declaration of White, Paragraph 21). Other warrant clerks made mistakes which resulted in the arrest of people and were not assigned to work only the radio, including Nick Pride, Sharon Trent, Paula Jones and Donya King. (Ex. E, Depo. of Roller, pp. 20-28; Ex. F –

23

Depo. of Trent, pp. 10-14; Ex. G – Depo. of King, pp. 10-14, 24-25, 38; Ex. H – Various Employment records of Pride, Trent and Jones; Ex. I, Depo of Tindall, 30; Ex. J – Depo. of Pride – *Milligan v. Nashville*, pp. 47-48, 56-58, 60, 65, 69-71).  In fact the errors in the warrants division were "fairly normal."  (Ex. G, Depo. of Trent, p. 14; Depo. of King, p. 12).

## D.  Plaintiff has provided sufficient evidence of harassment and hostilities to deny summary judgment

In order to maintain an action for a hostile work environment under the ADA, the employee must demonstrate that: (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures. See Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872 (6th Cir.1997) (establishing the framework of proof under Title VII for sexual harassment); Crawford v. Medina General Hosp., 96 F.3d 830, 834 (6th Cir.1996) (holding that the elements of a hostile work environment claim are the same across discrimination contexts and applying those elements specifically to the Age Discrimination in Employment Act). The Supreme Court has elaborated on what type of conduct can constitute harassment and form the basis for a hostile work environment claim. See Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To prevail, the employee must show conduct that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and [to] create an abusive working environment." See ibid.; Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

The Sixth Circuit recognizes ADA hostile work environment claims. The standard for such claims tracks that used for hostile work environment sexual harassment claims. .  In determining whether there was a hostile or abusive work environment, the court looks to the totality of the

circumstances. Faragher v. City of Boca Raton, 524 U.S. 775, 787-88, 118 S.Ct. 2275, 141 L.Ed.2d 662, (1998). In particular, the court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

Accordingly, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment to create an abusive working environment." *Broska v. Henderson,* 70 Fed.Appx. 262 (6th Cir. June 30, 2003) (citing *Harris,* 510 U.S. at 21, 114 S.Ct. 367). Moreover, the test "has both an objective and subjective component: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive." *Id.*

Plaintiff was subjected for years to her supervisors ridiculing her in front of her co-employees about being disabled, requiring her to carry the radio into the restroom to answer calls and accused of failing to properly execute her duties. In addition, Plaintiff was refused over several years insertion into the rotation because of her disability, unwarranted disciplinary actions and negative performance evaluations all of which were, from an objective and subjective component abusive.

### E. Plaintiff has shown a pattern of retaliation to warrant denial of Defendant's Motion for Summary Judgment

Retaliation claims are treated the same whether brought under the ADA or Title VII." Barrett v. Lucent Techs., Inc., 36 Fed.Appx. 835, 840 (6th Cir.2002) (citing Penny v. UPS, 128 F.3d 408, 415 (6th Cir.1997)). To establish a prima facie case for retaliation a plaintiff must demonstrate that: (1) she engaged in protected activity (under the ADA or Title VII), (2) the

activity was known to the employer, (3) she thereafter suffered an adverse employment action, and (4) a causal link exists between the protected activity and the adverse employment action. *Clark v. City of Dublin, Ohio,* 178 Fed.Appx. 522, 525 (6th Cir.2006); *see also Kuriatnyk v. Township of Bazetta, Ohio,* 93 Fed.Appx. 683, 686 (6th Cir.2004), *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir.2000). To establish the requisite causal connection under the third prong, Plaintiff must submit "evidence 'sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.' " *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir.1997) ( *citing Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.1990)). Within days of Plaintiff's informal and formal complaints of discrimination and harassment she was refused insertion into the rotation, subjected to disciplinary action for alleged violations more than two years old, and unwarranted negative performance evaluations.

Federal discrimination law prohibits discrimination or retaliation against an employee who has "opposed" discrimination or has made a "charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." T.C.A. Sec 4-21-301

Informal complaints to superiors or the use of the employer's internal grievance procedures constitutes protected activity under Title VII. *Robbins v. Jefferson Co. School Dt. R-1,* 186 F.3d 1253, 1258 (10th Cir. 1999)

To establish a *prima facie* case of retaliation, the plaintiff must show that: 1) plaintiff engaged in activity protected by federal discrimination law; 2) plaintiff's exercise of such protected activity was known by the defendant; 3) thereafter, the defendant took an adverse employment action against plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 860 (6th Cir. 1997)

In a retaliation claim, the plaintiff is not required to prove that the underlying claim for discrimination was meritorious. Instead, a plaintiff is required to prove only that the claim for discrimination was made in good faith. *Robbins v. Jefferson Co. School Dt. R-1,* 186 F.3d 1253, 1258, quoting *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 385 (10th Cir. 1984)

The burden of establishing a *prima facie* case in a retaliation action is not onerous; but one easily met. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000) Once a *prima facie* case is established, the burden of producing some non-discriminatory reason falls upon the defendant. If the defendant demonstrates such, the plaintiff then assumes the burden of showing that the reasons given by the defendant were a pretext for retaliation. *Williams v. Nashville Network,* 132 F.3d 1123, 1131 (6th Cir. 1997)

With regard to the last element of establishing a causal link, the plaintiff must proffer evidence sufficient to raise an <u>inference</u> that their protected activity was the likely reason for the adverse action. *EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1977) At the *prima facie* stage, the burden is minimal, requiring the Court to draw reasonable inferences from that evidence. *Id.*

To establish a "causal connection" between the protected activity and the adverse employment action, "[a]lthough no one factor is dispositive in establishing a causal connection, evidence that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000) The Sixth Circuit has embraced the premise that where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that proximity is deemed

indirect evidence such as to permit an inference of retaliation to arise. *Brown v. ASD Computing Ctr.*, 519 F.Supp. 1096, 1116 (S.D. Ohio 1981); *Nguyen,* 229 F.3d at 567

In *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004), the Sixth Circuit recently held that a recommendation to terminate an employee, made thirteen (13) days after filing his EEOC Charge, was sufficient to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive and held that *DiCarlo* has satisfied all the elements necessary to establish a *prima facie* case, thereby creating a genuine issue of material fact as to whether his termination was effectuated in retaliation for his filing an EEOC Charge.

Courts have recently expressed reluctance to grant summary judgment once the plaintiff has established a *prima facie* case of retaliation. In *Singfield v. Akron Metropolitan Housing Authority*, the Court reversed summary judgment on plaintiff's retaliation claim. In reaching its decision, this Court recognized that in discrimination and retaliation cases, an employer's true motivations are particularly difficult to ascertain. The Court recognized that it should use caution in granting summary judgment and acknowledged that several other circuits have also urged caution in granting summary judgment once the plaintiff has satisfied the *prima facie* case, concluding that once a *prima facie* case is established by either the introduction of direct evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the "elusive factual question of intentional discrimination."

In *Singfield* the **Court concluded that the true reasons for discharging plaintiff presented an "elusive factual question," incapable of resolution on summary judgment.** Accordingly, the Court held that in light of plaintiff's argument that the temporal proximity of

the discrimination charge and his termination give rise to an inference of retaliation, the plaintiff had satisfied the sufficiency standard at the summary judgment phase.

In the case of *Morris v. Oldham County Fiscal Court*, 201 F.3d 784 (6th Cir. 2000), the Sixth Circuit held that the case was not appropriate for summary judgment on the retaliatory harassment claim and remanded the case to the Trial Court, specifically holding that "a reasonable juror could conclude that Likins's [the supervisor's] behavior after the lodging of Morris's [plaintiff's] complaint constituted severe or pervasive retaliatory harassment."[1]

A plaintiff must show that a reasonable employee would have found the challenged action materially adverse, "which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington Northern and Santa Fey Ry. Co. v. White,* 126 S.Ct. 2405, 2415 (2006); citing, *Rochon v. Gonzales,* 438 F.3d 1211, 1219 (C.A.D.C. 2006).

An employee may demonstrate that an employer's proffered, non- discriminatory reasons for an adverse employment action (i.e., retaliation) are pretextual by revealing the "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation. Three of the most common ways to undermine an employer's proffered reasons include establishing that the proffered reasons: (1) have no basis in fact; (2) did not actually motivate the adverse employment action; or (3) were insufficient to motivate the adverse employment action.

Pretext may be shown either directly, by persuading the trier of fact that a discriminatory reason more likely motivated the employer; or indirectly, by showing that the employer's proffered explanation is unworthy of belief. *Smith v. Chrysler Corp.*, 155 F. 3d 799, 805-806

---

[1] 201 F.3d at 793

(6th Cir. 1998)  In other words, the plaintiff can establish pretext if the employer's stated reason for action had no basis in fact, did not actually motivate the decision, **or was never used in the past**. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000).

Defendant argues, as its legitimate non-discriminatory reason, were the mistakes Plaintiff was making in the performance of her duties, but as shown above she made no more mistakes than other clerks in the department.  Plaintiff denies that she made repeated errors or any more errors that any other person in the warrants division.  (Ex. A, Declaration of White, Paragraph 21).  Other warrant clerks made mistakes which resulted in the arrest of people and were not assigned to work only the radio, including Nick Pride, Sharon Trent, Paula Jones and Donya King.  (Ex. E, Depo. of Roller, pp. 20-28; Ex. F – Depo. of Trent, pp. 10-14; Ex. G – Depo. of King, pp. 10-14, 24-25, 38; Ex. H – Various Employment records of Pride, Trent and Jones; Ex. I, Depo of Tindall, 30; Ex. J – Depo. of Pride – *Milligan v. Nashville*, pp. 47-48, 56-58, 60, 65, 69-71).  In fact the errors in the warrants division were "fairly normal."  (Ex. G, Depo. of Trent, p. 14; Depo. of King, p. 12).

In addition, a co-worker, Officer Mann, felt that Plaintiff's treatment was outrageous, degrading and demeaning.  *Id.*  He also observed employees knock on the bathroom door when Plaintiff went to the restroom.  *Id.*  Officer Mann further testified that he did not like the way that Ms. White was being treated and he thought it was inappropriate.  *Id.*

As has been shown, negative performance evaluations have been withdrawn after review by upper management and disciplinary actions significantly reduced by independent reviewers.

**Conclusion**

There clearly existsgenuine issues of material facts negating Defendant's motion for summary judgment.

Respectfully Submitted,

ANDY L. ALLMAN & ASSOCIATES

  /s/ Andy L. Allman
Andy L. Allman  (17857)
103 Bluegrass Commons Blvd
Hendersonville, Tennessee  37075
(615) 824-3761
andylallman@comcast.net

LAW OFFICE OF ANDREW C. CLARKE

/s/ Andrew C. Clarke
Andrew C. Clarke, BPR No. 15409
6250 Poplar Avenue, Second Floor
Memphis, Tennessee 38119
Telephone: (901) 590-0761
Facsimile: (901) 590-0776
aclarke@accfirm.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing has been filed with the Court via the ECF system and forwarded by electronic means via e-mail on this the 11th day of December 2012.

Allison L. Bussell, BPR No. 23538
THE DEPARTMENT OF LAW OF
THE METROPOLITAN GOVERNMENT
OF NASHVILLE AND DAVIDSON COUNTY
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219-6300
Telephone: (615) 862-6341
Counsel for Defendant

/s/ Andrew C. Clarke
Andrew C. Clarke

---

[i] The analysis of pretext is the same in ADEA and ADA cases.